**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| National Labor Relations Board, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| v. | ) | |
| | ) | |
| State of North Dakota, | ) | Case No. 1:06-cv-064 |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, National Labor Relations Board ("NLRB"), seeks a declaratory judgment that Section 34-01-14.1 of the North Dakota Century Code is preempted by the National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq. On November 3, 2006, the NLRB filed a motion for summary judgment. The defendant, North Dakota, filed a response in opposition on December 4, 2006, and the NLRB submitted a reply brief on December 14, 2006. For the reasons set forth below, the plaintiff's motion is granted.

## I. BACKGROUND

North Dakota is a "right-to-work" state and is one of 22 states that have right-to-work laws. This means that North Dakota law prohibits labor -management agreements that require membership in a labor union as a condition of employment. See N.D. Cent. Code § 34-01-14. However, Section 34-01-14.1 of the North Dakota Century Code requires employees who choose not to join a union to pay the union for any expenses incurred in representing the employee in contractual grievance and arbitration procedures. Therefore, unlike North Dakota's right-to-work law which prohibits

compulsory union membership, Section 34-01-14.1 requires unions to charge non-members for grievance processing.

Federal law requires unions to fairly represent both members and non-members of the union. See Electrical Workers (IBEW) v. Foust, 442 U.S. 42, 47 (1979). A union's duty of fair representation is a judicially-developed corollary to the union's status as the exclusive employee representative granted by Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a). This duty of fair representation, together with a right-to-work law prohibiting a contractual membership requirement, creates a "free-rider" problem because non-members arguably receive the benefit of union representation without paying for it. See Radio Officers' Union v. NLRB, 347 U.S. 17, 41 (1954).

The NLRB is an independent federal agency created by Congress to administer the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169. The NLRB filed this action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and argues that Section 34-01-14.1 is preempted by federal law. The NLRB contends that Section 34-01-14.1 is in actual conflict with the NLRA, regulates conduct within the primary jurisdiction of the Board because it requires unions to charge non-members for grievance processing, and is outside the scope of state action allowed under Section 14(b) of the NLRA, 29 U.S.C. § 164(b). The NLRB contends that while the enactment of Section 34-01-14.1 may seem like a reasonable solution to the "free-rider" problem that results from the enactment of right-to-work legislation, Congress left it up to the NLRB to make this determination, not the states. The NLRB contends that Section 34-01-14.1 is preempted because the state law is in actual conflict with the National Labor Relations Act and the law regulates conduct within the primary jurisdiction of the NLRB.

## II. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999). Summary judgment is particularly appropriate where the unresolved issues are primarily legal rather than factual. Lomar Wholesale Grocery v. Dieter's Gourmet Foods, 824 F.2d 582, 585 (8th Cir.1987). The issue of whether state law is preempted by federal law is a question of law for the court, and thus can be properly disposed of at summary judgment. See Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999) (stating that preemption is a question of law).

## III. LEGAL DISCUSSION

### A. JURISDICTION

It is the obligation of the Court to be alert to jurisdictional requirements and to treat subject matter jurisdiction as a threshold issue for resolution, even if not raised by the parties. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 593 (2004). The NLRB filed this action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202. 28 U.S.C. § 2201 requires that there must be an "actual controversy" before the Court may issue a declaratory judgment as to the rights and other legal relations of interested parties in a case.

"To constitute an actual controversy, 'the disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in

deciding them.'" People of the State of Illinois v. General Elec. Co., 683 F.3d 206, 209 (7th Cir.1982) (quoting Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 244 (1952)). A declaratory judgment action must be for the resolution of an existing conflict and not merely raise a possible defense. Conference of Fed. Sav. and Loan Ass'ns v. Stein, 604 F.2d 1256, 1259 (9th Cir. 1979).

It is clear that a conflict between a state statute and federal regulations presents a justiciable controversy. See Conference of Fed. Sav. and Loan Ass'ns v. Stein, 604 F.2d 1256, 1259 (9th Cir. 1979) (holding that conflicting positions taken by a state agency and a federal agency on the effect of a state statute created an actual justiciable controversy); First Fed. Sav. and Loan Ass'n of Boston v. Greenwald, 591 F.2d 417, 423 (1st Cir. 1979) (providing that state and federal regulations currently in effect that subject the associations to conflicting requirements presents a justiciable controversy). The Court finds that an actual justiciable controversy is presented and that the jurisdictional requirements for a declaratory judgment action have been met under 28 U.S.C. § 2201.

## B. FEDERAL PREEMPTION DOCTRINE

The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme law of the land." U.S. Const. Art VI, cl. 2. It is well-established that Congress possesses the power to preempt state law. Congress may preempt state law by an explicit mandate contained in the federal enactment of the law, or by indicating an intent to occupy the field of regulation and thereby displace state laws on the same subject. Brown v. Hotel & Rest. Employees & Bartenders, 468 U.S. 491, 501 (1984). Even if Congress has not indicated an express or implied intent to occupy a field, the court may find state law displaced to the extent that it actually conflicts with federal law. Id. "Such actual conflict between state and federal law exists when

'compliance with both federal and state regulations is a physical impossibility' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. It is well-established that state law which interferes with NLRA-protected rights "creates an actual conflict and is preempted by direct operation of the Supremacy Clause." Id.

In San Diego Bldg. Trades Council, Etc. v. Garmon, 359 U.S. 236 (1959), the United States Supreme Court created a broad rule of preemption to serve several kinds of state intrusions on federal labor law, including "potential conflict of rules of law, of remedy, and of administration." Id. at 242.

> The danger from the first kind of conflict is that the State will require different behavior than that prescribed by the NLRA (the substantive concern); the danger from the second is that the State will provide different consequences for the behavior (the remedial concern); and the danger from the third is that Congress's design to entrust labor questions to an expert tribunal-the NLRB-would be defeated by state tribunals exercising jurisdiction over labor questions (the primary jurisdiction concern).

Healthcare Ass'n of New York State, Inc., v. Pataki, 471, F.3d 87, 94-95 (2nd Cir. 2006). To protect against such conflicts, the Garmon preemption doctrine provides that state laws or regulations are preempted "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the NLRA, or constitute an unfair labor practice under § 8." San Diego Bldg. Trades Council, Etc. v. Garmon, 359 U.S. 236, 244 (1959). Garmon extended preemption by providing that "when an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." Id. at 245.

The Garmon doctrine provides that "[s]tates may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." Wis. Dept. of Indus., Labor & Human

Relations v. Gould Inc., 475 U.S. 282, 286 (1986). This broad principle has been utilized to preempt state action where the conflict was substantive, remedial, and relating to the primary jurisdiction of the NLRB. See Livadas v. Bradshaw, 512 U.S. 107, 116-117 (1994) (state law held preempted because it conflicted with federal labor law); Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc., 475 U.S. 282, 287-288 (1986) (state regulation preempted even though it augmented the remedies provided by federal labor law); San Diego Bldg. Trades Council, Etc. v. Garmon, 359 U.S. 236, 244 (1959) (state court exercised jurisdiction over a state claim involving actions arguably prohibited by the NLRA and the state tort claim was preempted even though the NLRB declined jurisdiction over the unfair labor practice proceeding).

The United States Supreme Court has separated and distinguished the substantive and remedial concerns from the primary jurisdiction concern and prescribed different treatment for each. Healthcare Ass'n. of New York State, Inc., v. Pataki, 471 F.3d 87, 95 (2nd Cir. 2006) (citing Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180 (1978)). "The primary jurisdiction rationale justifies preemption only in situations in which an aggrieved party has a reasonable opportunity either to invoke the Board's jurisdiction himself or else to induce his adversary to do so." Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 201 (1978). Where the conduct at issue is arguably protected by the NLRA, it may be impossible for the party seeking an adjudication to bring a dispute before the NLRB in the form of an unfair labor practice proceeding. In this situation, the NLRB's primary jurisdiction will not be in danger. Id. at 201-203. However, there is still a substantive Supremacy Clause concern that the state could restrict or hamper federally protected rights, and the state may still be preempted if there

is a strong showing that the State has interfered with the protections of Section 7 or 8 of the NLRA. Healthcare Ass'n of New York State, Inc., v. Pataki, 471 F.3d 87, 96 (2nd Cir. 2006).

### 1. ACTUAL CONFLICT PREEMPTION

Preemption by actual conflict exists when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Brown v. Hotel & Rest. Employees & Bartenders, 468 U.S. 491, 501 (1984) (citing Florida Lime & Avocado Growers, Inc., v. Paul, 373 U.S. 132, 142-143 (1963); Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). "If a state law regulates conduct that is actually protected by federal law... preemption follows not as a matter of protecting primary jurisdiction, but as a matter of substantive right." Brown v. Hotel & Rest. Employees & Bartenders, 468 U.S. 491, 503 (1984).

Courts have frequently applied traditional preemption principles to find state law barred on the basis of an actual conflict with Section 7 of the National Labor Relations Act, 29 U.S.C. § 157. Brown v. Hotel & Rest. Employees & Bartenders, 468 U.S. 491, 501 (1984) (collecting cases). "If employee conduct is protected under § 7, then state law which interferes with the exercise of these federally protected rights creates an actual conflict and is preempted by direct operation of the Supremacy Clause." Id.

Section 7 of the National Labor Relations Act provides as follows:

> **Employees shall have the right to** self-organization, to form, **join,** or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, **and shall also have the right to refrain from any or all of such activities** except to the extent that such right may be affected by an

> agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157 (emphasis added). Section 8(b)(1)(A) of the National Labor Relations Act makes unlawful employer interference with the rights provided in Section 7 and provides as follows:

> [i]t shall be an unfair labor practice for a labor organization or its agents– **(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title**: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein....

29 U.S.C. § 158(b)(1) (emphasis added).

The NLRB contends that the conduct required under Section 34-01-14.1 of the North Dakota Century Code is actually and arguably protected by Sections 7 and 8 of the National Labor Relations Act. Section 34-01-14.1 provides as follows:

> As used in this section, "actual representation expenses" are only those actual expenses which are sustained by a labor union or labor organization in processing any grievance of a nonunion employee. For grievances arising from actions occurring while an employee was a member of a bargaining unit of a management entity with which a labor union or labor organization has a contract, but while that employee was not a member of that union or organization, that labor union or labor organization shall collect actual representation expenses from that nonunion employee. Actual representation expenses may be assessed only in instances in which a nonunion employee has specifically requested in writing to use representation by the labor union or labor organization. A nonunion employee may not be compelled to pay any expenses incurred by a labor union or labor organization in the course of general contract negotiations or collective bargaining. An assessment under this section is not an abridgement of any rights guaranteed under section 34-01-14. This section does not abridge or in any way interfere with rights guaranteed employees generally under the Labor Management Reporting and Disclosure Act of 1959 [29 U.S.C. 401 et seq.].

N.D. Cent. Code § 34-01-14.1 (2005). Section 34-01-14.1 regulates conduct that is actually protected by federal law because it mandates that unions charge non-members for grievance processing whenever union representation is provided in response to a non-member's written request

for representation. North Dakota has chosen to inject an agency fee requirement into every collective-bargaining agreement negotiated in the state. The NLRB contends that charging non-member employees a fee for grievance processing constitutes an unfair labor practice under Section 8(b)(1)(A) of the NLRA because such a fee has a coercive effect on non-member employees in the exercise of their right to join or refrain from joining a labor organization.

The NLRB relies on decisions by its Board which have held that charging a non-member employee a fee for union grievance processing is coercive and constitutes an unfair labor practice under Sections 8(a)(1) and 8(b)(1)(A). See Furniture Workers Div., Local 282 (The Davis Co.), 291 N.L.R.B. 182, 183 (1988) (holding that a union's charging a non-member employee a fee for grievance processing coerces employees in the exercise of their Section 7 freedom to refrain from joining a labor organization); Columbus Area Local, Am. Postal Workers Union (U.S. Postal Serv.), 277 N.L.R.B. 541, 543 (1985) (stating that "the law is clear that a union violates § 8(b)(1)(A) of the [NLRA] by charging or threatening to charge nonmembers the costs of processing any grievances they may file" because "[c]harging nonmembers the cost of providing a service which members get free (even though they pay dues) has a coercive effect on nonmembers in the exercise of their right to join or refrain from joining a union"); Machinists, Local Union No. 697 (The H.O. Canfield Rubber Co.), 223 N.L.R.B. 832, 835 (1976) (stating that "by charging nonmembers for grievance representation, [the union] has discriminated against nonmembers" and "[t]o discriminate against nonmembers by charging them for what is due them by right restrains them in the exercise of their statutory rights").

Neither party has provided the Court with any authority concerning the preemptive effect of a federal agency's adjudicative decisions and orders. Adjudicative decisions and orders issued

by federal agencies are not subject to the same stringent rulemaking process required of federal regulations. See N. L. R. B. v. Wyman-Gordon Co., 394 U.S. 759, 763-764 (1969) (providing that the "Administrative Procedure Act contains specific provisions governing agency rule making . . . which requires among other things, publication in the Federal Register of notice of proposed rule making and of hearing; opportunity to be heard; a statement in the rule of its basis and purposes; and publication in the Federal Register of the rule as adopted."). No notice and comment period is required before adjudicating a case, and the adjudicative decision and order, while binding on the parties to the dispute, is not binding on third parties and is merely advisory as to the agency's position on a subject. Nevertheless, the Court has considered the reasoning of the NLRB's decisions and orders in undertaking an independent analysis of whether Section 34-01-14.1 of the North Dakota Century Code is in actual conflict with Sections 7 and 8 of the National Labor Relations Act.

The Court finds the NLRB adjudicative decisions to be persuasive. Section 34-01-14.1 of the North Dakota Century Code alters the considerations underlying an employee's choice of whether to join or refrain from joining a union. An employee deciding whether to join a union will need to consider that if he/she does not join the union, a fee will still have to be paid to the union for grievance processing. Charging non-union members the cost of providing a service which union members get free (even though they pay dues) has a coercive effect on non-members in the exercise of their right to join or refrain from joining a union. The purpose of the National Labor Relations Act was to obtain a uniform application of its substantive rules and avoid conflicts likely to result from a variety of local procedures and attitudes toward labor disputes. NLRB v. Nash-Finch Co., 404 U.S. 138, 144 (1971). This statutory provision stands as an obstacle to these congressional

objectives because it requires non-union members to pay the union for the costs of grievance processing.

It is clear that the conduct required by Section 34-01-14.1 is actually protected by Sections 7 and 8 of the National Labor Relations Act. The coercive effect of Section 34-01-14.1 violates Section 8(b)(1)(A) of the NLRA. Section 34-01-14.1 is in actual conflict with the Act because North Dakota law requires unions to engage in conduct which is prohibited by the NLRA. Section 34-01-14.1 compels unions to charge non-members for grievance processing whenever union representation is provided in response to a non-member written request for representation. The NRLB has consistently held that a union commits an unfair labor practice when it charges non-members for the costs of grievance processing because such charges interfere with employee's rights protected by Section 7 of the Act, 29 U.S.C. § 157. The Court concludes as a matter of law that Section 34-01-14.1 is in actual conflict with federal law because compliance with both state law and the federal law is a physical impossibility.[1] The state law (Section 34-01-14.1) stands as an obstacle to the full accomplishment

---

[1] The North Dakota Attorney General recently recognized the importance of federal preemption when there is a direct conflict between state law and federal law in the field of labor relations. In Letter Opinion 2007-L-02 issued on January 30, 2007, the Attorney General wrote:

> Congress has enacted comprehensive legislation governing labor relations which affect interstate and foreign commerce. The National Labor Relations Act and its amendments embody the national labor policy of the United States, addressing collective bargaining between employers and unions. Disputes and the rules that apply to collective bargaining have been placed within the special competence and primary jurisdiction of the National Labor Relations Board. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 238, 245 (1959).
>
> Arising as a consequence of the Supremacy Clause of the United States Constitution, federal preemption of state law occurs when there is a direct conflict between state and federal law making compliance with both an impossibility, or when state law stands as an obstacle to the full accomplishment of the objectives sought by Congress. Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54, 468 U.S. 491, 501 (1984). In addition, preemption is applied where necessary to preserve the primary jurisdiction of an agency charged with implementing federal law. Questions of preemption under the National Labor Relations Act typically involve matters that are subject to the primary jurisdiction of the National Labor Relations Board, Garmon, supra, or matters that Congress sought to leave unregulated and therefore subject to unrestrained bargaining between the parties. Machinists v. Wis. Employment Relations Comm'n, 427 U.S. 132, 138 (1976).

Op. Att'y Gen. 2007-L-02.

of the objectives sought by Congress through the enactment of the National Labor Relations Act. In enacting Sections 7 and 8 of the NLRA, Congress evidenced an intent to enact comprehensive regulations governing labor relations and displace conflicting state laws on the same subject.

## IV. CONCLUSION

The Court concludes as a matter of law that Section 34-01-14.1 of the North Dakota Century Code is in actual conflict with the National Labor Relations Act, specifically Sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157 and 158(b)(1). As such, the state law is preempted by the Supremacy Clause as a matter of law. The Court **GRANTS** the National Labor Relations Board's Motion for Summary Judgment (Docket No. 7). The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 1st day of February, 2007.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court